D. Gill Sperlein (SBN 172887)
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, California 94102
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorney for Plaintiff Celestial, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELESTIAL, INC, <br><br> Plaintiff, <br><br> vs. <br><br> SWARM SHARING HASH 8AB508AB0F9EF8B4CDB14C6248F3C96C65BEB882 ON **OCTOBER 27, 2011** and DOES 1 and 2, <br><br> Defendants. | CASE NO.: 12-CV-00128 DDP (SSx) <br><br> **DECLARATION OF TOBIAS FIESER IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26 CONFERENCE** <br><br> **DISCOVERY MATTER** <br><br> Date: March 5, 2012 <br> Time: 10:00 a.m. <br> Judicial Officer: Hon. Dean Pregerson <br><br> (But submitted on record) |

I, Tobias Fieser, declare:

1. The facts that I state herein are within my personal knowledge, I know the same to be true, and if called upon to testify I could and would.

2. I am the Director of Data Services for IPP International UG (IPP), a company incorporated in Germany under company number 115546. IPP is a provider of online anti-piracy services for the motion picture industry. IPP is the leading provider of online anti-piracy services for the motion picture industry.

3. I have been employed with IPP since 2010. Before employment with IPP, I held various software developer and consultant positions at companies where I specialized in filesharing technologies. I have nearly seven years experience related to protocols, technical architecture, and operation of the Internet and filesharing technologies.

4. At IPP, I am the head of the department that carries out evidence collection and provides litigation support services. I work closely with our research team to create credible and reliable processes to scan for, detect, and download copies of infringed material on multiple network protocols for use by copyright owners. I have a strong understanding of P2P technology, a method by which users (peers) may download to their computers software that allows them to locate and transfer files to and from other users/peers. In order to use the software to locate and exchange files, a user/peer must first connect to the Internet.

**The Nature of Bit Torrent Technology**

5. While the Internet affords the unparallelled opportunity to exchange vast amounts of important information, it also affords opportunities for the wide-

scale infringement of copyrighted motion pictures. Once transformed into an unsecured digital format, infringers can further reproduce and distribute a movie over the Internet an unlimited number of times without significant degradation in picture or sound quality.

6. To reproduce and distribute motion pictures over the Internet, many individuals use online media distribution systems commonly referred to as "peer-to-peer" (P2P) networks. P2P networks are computer systems that enable Internet users to make files on their computers available to others, search for files stored on other users' computers, and transfer exact copies of files form one computer to another via the Internet. "BitTorrent" protocol or "torrent" is different from the standard P2P protocol used for such networks as KaZaa and Limewire. BitTorrent protocol makes even small computers with low bandwidth capable of participating in large data transfers across a P2P network.

7. First, in a process called "seeding", an initial file-provider shares a file with P2P networks. Other users ("peers') on the network connect to the seed file to download. However, unlike a traditional P2P network, each new file downloader receives a different piece of data from each user who has already downloaded the file that together comprises the whole. This piecemeal system with multiple pieces of data coming from different peer members is called a "swarm". As new peers request the same file, each new peer becomes a part of the network and the peers

-3-

DECLARATION OF TOBIAS FIESER IN
SUPPORT OF REQUEST FOR EARLY DISCOVERY
C-12-128 DDP (SSx)

offer parts of the file stored on his computer to other peers. This means that every "node" or peer who has a copy of the infringing copyrighted material also becomes a source of download for that infringing file.

8. Once connected, the program begins coordinating the copying of a file among participating computers. As the system copies pieces of a file to a peer's computer, the system immediately makes those pieces available to other connected peers seeking to obtain the file. The distributed nature of BitTorrent leads to a rapid viral spreading of a file throughout peer users. As more peers join the swarm, the efficiency, speed, and likelihood of a successful download increases.

9. In order to engage in the reproduction and distribution of a file such as a movie, each participating peer obtains a reference file from the video index of a BitTorrent website and loads that reference file into a computer program designed to read such files. With a reference file loaded, the BitTorrent program employs the BitTorrent protocol to initiate simultaneous connections to hundreds of other peers possessing and sharing pieces of the movie described in the reference file. The system tracks each file exchanged in this manner by creating a unique HASH ID.

10. Because of the nature of a P2P network, any peer who has downloaded a part of the file prior to the time a subsequent peer downloads the same file is a possible source for the subsequent peer as long as that first peer is online at the time the subsequent peer begins to download the file.

11. IPP has licensed a proprietary technology that enables it to detect and monitor the unauthorized transfer and distribution of files among P2P networks by different protocols. Celestial, Inc. engaged IPP to detect and record the IP addresses of individuals who, without authorization, reproduced and distributed its movies using P2P technologies. IPP employed specially designed software technology to identify direct infringers of Celestial's works. IPP documented evidence of unauthorized reproduction and distribution of Celestial's works within the United States, including California.

12. The claims identified in the Complaint involve peers who shared the same unique HASH ID on the same day.

13. IPP used the search function of the P2P network to look for peers who offered for distribution audiovisual files labeled with the name of Plaintiff's copyrighted motion picture. IPP downloaded and carefully reviewed the file and recorded the algorithmically created unique hash ID the system assigned the file. Having confirmed that the hash ID identified Plaintiff's motion picture, IPP commenced searching for peers making the content available for distribution. IPP downloaded a part of the file and recorded the Internet Protocol (IP) address the peer used to access the Internet and other specific information in order to confirm the peer was distributing Plaintiff's movie.

14. Once IPP's searching software program indentified a peer distributing Plaintiff's work as described herein, IPP obtained and recorded publically available information about the peer that is designed to help Plaintiff identify the infringer. Among other things, IPP downloads or records for each file downloaded: a) the time and date at which the peer distributed the file or a part of the file; b) the IP address the peer used to access the Internet at the time of distribution; and in some cases c) the video file's metadata (digital data about the file), such as title and file size, that is not part of the actual video content, but that is attached to the digital file and help identify the content of the file. IPP then creates evidence logs for each user and store all this information in a database.

### The Need for Expedited Discovery

15. Obtaining the identity of the subscribers assigned the IP addresses the peers used to access the Internet and distribute Plaintiff's movie is critical to the prosecution of this action. Without such discovery, Plaintiff has no way of identifying and serving Defendants with the Complaint and Summons. Plaintiff does not have Defendants' names, addresses, e-mail addresses, or any other way to identify or locate Defendants, other than the unique IP address the peer used to access the Internet and engage in the infringing conduct.

16. Individuals gain access to the Internet through an Internet service provider (ISP). When an ISP provides Internet access to a subscriber, it does so

through a modem at the location the subscriber uses to access the Internet, usually the home or office. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or even an entity such as a university that is large enough to establish its own network and link directly to the Internet.

17. Each time the subscriber accesses the Internet, the ISP provides a unique number to the subscriber called an Internet Protocol (IP) address. This is somewhat akin to a telephone number. The IP address for a subscriber may stay the same over time (a static IP address) or it may change from time to time (a dynamic IP address). Most ISPs record in user logs the times and dates it assigns each IP address to a subscriber.

18. P2P technologies, including the BitTorrent protocol, rely on the ability to identify the computers to and from which peers search and exchange files. The software used by peers identifies the computers of other peers via the IP address through which the peer connected to the Internet. IPP identified the IP addresses of individuals who connected to the Internet to distribute the file or pieces of the file containing Plaintiff's copyrighted movie.

19. The IP addresses IPP identified for Plaintiff enable us to determine which ISP each peer used to gain access to the Internet. Anyone can perform a simple search on public databases to determine which Internet access provider

controls a specific IP address. However, some ISPs lease or otherwise allocate certain of the IP addresses to other unrelated, intermediary ISPs. Since these ISPs consequently have no direct relationship with the subscriber, they are unable to identify user information. The intermediary ISPs' own user logs, however, should permit identification of the subscribers. For this reason, Plaintiff may be required to serve a second subpoena on an intermediary ISP. We determined that the potential defendants here were using those ISPs listed in Exhibit A, attached hereto together with other ISPs operating both within and outside California, to gain access to the Internet to reproduce and distribute Plaintiff's copyrighted motion picture.

20. In my experience, Internet service providers maintain subscriber activity logs indicating which of its subscribers were assigned an IP address at any given date and time, but only maintain subscriber activity logs for a short period of time before destroying the information contained in the logs. If an ISP does not have to respond expeditiously to a discovery request, the ISP may destroy the identification information stored in the ISP's logs.

21. I am aware of no reliable means for identifying the DOE Defendants in this matter other than obtaining subscriber information for IP addresses associated with the infringing activity from Internet service providers.

**Conformation of Downloaded Material**

22. My responsibilities at IPP include confirming that the digital audiovisual files downloaded by IPP are actual copies of Plaintiff's motion picture. It is possible for peers to mislabel digital files either accidentally or on purpose, and sometimes, digital files are corrupted. Therefore, IPP (and accordingly Plaintiff) does not rely solely on the labels and metadata attached to the files to determine which motion picture the downloaded file contains, but also confirms the content through a visual comparison between the downloaded file and a legitimate copy of the motion picture.

23. As to Plaintiff's copyrighted motion picture identified in the Complaint, I or one of my assistants have watched a DVD copy of the motion picture provided by Plaintiff. After IPP identified the peers and downloaded the motion picture they distributed, we opened the downloaded files, watched them, and confirmed that they contain a substantial portion of the motion picture identified in the Complaint.

Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated: 31st January 2012

TOBIAS FIESER
IPP International UG

-9-

DECLARATION OF TOBIAS FIESER IN
SUPPORT OF REQUEST FOR EARLY DISCOVERY
C-12-128 DDP (SSx)